IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRISTOPHER O'NEAL HUNDLEY,       )
AIS #206030,                      )
                                  )
        Plaintiff,                )
                                  )
    v.                            )       CIVIL ACTION NO. 2:05-CV-502-ID
                                  )              [WO]
                                  )
BOB RILEY, et al.,                )
                                  )
        Defendants.               )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint

filed by Christopher O'Neal Hundley ["Hundley"], a state inmate, on June 20, 2005 (Court

Doc. No. 15).[1]  In this pleading, Hundley alleges the defendants violated his constitutional

rights during his confinement at the Montgomery Community Work Center.  Specifically,

Hundley complains the defendants (i) acted in concert against him, (ii) subjected him to

unconstitutional conditions of confinement, (iii) lodged disciplinary charges against him

for exercising his right of free speech, (iv) prosecuted him on frivolous disciplinary

charges, (v) subjected him to job discrimination, and (vi) censored his mail.  *Plaintiff's*

*Amended Complaint - Court Doc. No. 15* at 4-6.  Hundley names Bob Riley, Governor of

the State of Alabama, Donal Campbell, a former commissioner of the Alabama Department

---

[1]This case is before the court "only on those claims [presented] and against the defendants named
in the amended complaint." *June 20, 2005 Order - Court Doc. No. 16* at 1.

of Corrections, Leeposey Daniels, warden of the Montgomery Community Work Center, and Elizabeth Allen, a kitchen steward at the work center, as defendants in this cause of action. Hundley seeks declaratory relief and monetary damages for the alleged violations of his constitutional rights.

The defendants filed a special report and supporting evidentiary materials addressing Hundley's claims for relief (Court Doc. No. 31). Pursuant to the orders entered in this case, the court deems it appropriate to treat this report as a motion for summary judgment. *Order of September 8, 2005 - Court Doc. No. 33.* Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam) (quoting Fed.R.Civ.P. 56(c)). Thus, to survive the defendants' properly supported motion for summary judgment, Hundley is required to produce

2

"sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Specifically, the plaintiff must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenburg*, 498 F.3d at 1263. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not provide sufficient evidence to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Hence, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due

3

to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Consequently, where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

4

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Hundley has failed to demonstrate requisite genuine issues of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II.  DISCUSSION

### A.  The Conspiracy Claim

Hundley alleges the defendants acted in concert to effectuate violations of his constitutional rights. "Conspiring to violate another person's constitutional rights violates section 1983. *Dennis v. Sparks,* 449 U.S. 24, 27 101 S.Ct. 183, 186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11th Cir.1996)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).... [T]he linchpin for conspiracy is agreement ..." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832,

113 S.Ct. 98, 121 L.Ed.2d 58 (1992). In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants.... For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-1284. Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

The evidentiary materials submitted by the defendants rebut the plaintiff's self-serving, conclusory allegation that they conspired against him. Specifically, the defendants deny they acted in concert or otherwise to violate Hundley's constitutional rights. The court has carefully reviewed the pleadings filed by the plaintiff. Hundley fails to proffer any evidence, other than his own speculative statements, which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the [alleged] conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468. At best, Hundley's assertion is purely a self-serving, conclusory allegation that fails to assert those material facts necessary to establish a conspiracy between the defendants. *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984). Thus, there is a total lack of evidence, significantly probative or otherwise, to support Hundley's conspiracy theory, and summary

judgment is due to be granted in favor of the defendants on this claim. *Bailey*, 956 F.2d at 1122.

### B. Respondeat Superior

Hundley argues that defendants Riley and Campbell are liable to him for their failure to properly supervise subordinate correctional officials. He presents claims against the aforementioned defendants based solely on their supervisory positions in state government. The court notes it is undisputed that the aforementioned defendants had no personal involvement with any of the actions about which Hundley complains. Moreover, the evidentiary materials submitted by the defendants demonstrate that the alleged unconstitutional actions did not occur pursuant to a policy enacted by either of these defendants.

A defendant cannot be held liable under § 1983 based on a theory of respondeat superior or on the basis of vicarious liability. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006), *cert. denied*, ____ U.S.____, 127 S.Ct. 2428 (2007) ("Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability. *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999)."); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir.1993), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Zatler v. Wainwright*, 802 F.2d 397, 401

(11th Cir. 1986).  In light of the foregoing, the court concludes that summary judgment is due to be granted in favor of defendants Riley and Campbell.

## C.  Conditions of Confinement

Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (19891).[2]  "'[T]he Constitution does not mandate comfortable prisons.'  *Id.* at 349, 101 S.Ct. at 2400.  If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'  *Id.* at 347, 101 S.Ct. at 2399.  Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'  *Id.*"  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan***,** 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994).  A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware,

---

[2]The Eighth Amendment applies to the states through the Fourteenth Amendment.  *Rhodes,* 452 U.S. at 344-345.

... and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982-1983. Thus, in order to survive summary judgment on his claims challenging the conditions of confinement, Hundley is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("To be deliberately indifferent, Defendants must have been 'subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists-and the prison official must also 'draw that inference.' *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.").

The living conditions within a prison will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] ... [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347. "Conditions ... alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and

unusual under the contemporary standard of decency.... But conditions that cannot be said

to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347.

To determine whether conditions of confinement constitute cruel and unusual punishment,

the court must look to the effect the condition has upon the inmate. *Id*. at 366. In a case

involving conditions of confinement generally or several different conditions, the court

should consider whether the claims together amount to conditions which fall below

constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert.*

*denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986);

*see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Hundley complains that during his incarceration at the Montgomery Community

Work Center he was subjected to confinement in overcrowded and hot conditions. He

further complains that these conditions resulted in a health hazard, insufficient security,

inadequate shower times, unclean living areas and unsatisfactory laundry services. The

evidentiary materials submitted by the defendants refute the plaintiff's conclusory

allegations regarding the conditions of confinement. The defendants maintain no one acted

"to deprive inmate ... Hundley ... of his rights under the United States Constitution....

[I]nmates assigned to the Montgomery Community Work Center are provided adequate

living conditions, clothing, food, and access to medical and rehabilitative services. At no

time did [any correctional official] subject Plaintiff or other convicts to overcrowded and

barbaric health hazards or security issues as alleged by the Plaintiff." *Defendants' Exhibit 1 (Affidavit of Leeposey Daniels) - Court Doc. No. 31-2* at 2.

Despite his contentions regarding the conditions of confinement, Hundley fails to proffer any evidence, other than his own self-serving statements, that the challenged conditions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347. Furthermore, he fails to demonstrate any deliberate indifference or reckless disregard by the defendants with respect to his health or safety. Notably, the record is completely devoid of any evidence that the defendants had knowledge of specific facts regarding a particular condition from which an inference could be drawn that a substantial risk of harm existed to the plaintiff, that the defendants actually drew this inference and thereafter ignored the attendant risk of harm. Consequently, summary judgment is due to be granted in favor of the defendants on these claims. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *Carter*, 352 F.3d at 1349-1350.

### D.  The Challenged Disciplinaries

1.  **Retaliation**. Hundley contends defendant Elizabeth Allen charged him with disciplinaries for failure to obey a direct order and insubordination in retaliation for his submitting a complaint against Ms. Allen with the food services division of the Alabama Department of Corrections. Defendant Allen, however, denies this allegation and

11

maintains she disciplined Hundley *solely* because he violated institutional rules and regulations. The undisputed evidentiary materials submitted by the defendants, including documents contained in Hundley's institutional file, support this assertion. *Defendants' Exhibit 2 - Affidavit of Elizabeth Allen* at 2 (Inmate Hundley "was issued disciplinaries for rule violations #56 - Failure to Obey a Direct Order and #57 - Insubordination."); *Defendants' Exhibit 4 - Disciplinary Report No. MCWC-05-(I)-0152-A -- Testimony of Arresting Officer -Elizabeth Allen* ("On 5/29/05 ..., inmate Christopher Hundley ... was instructed by Steward Allen to stop talking on the serving line. Inmate Hundley then stated to Steward Allen that she could write him up because he was on medication and that he didn't have nothing but an EOS date. Inmate Hundley further stated that he was going to give Steward Allen something to write him up for. Inmate Hundley's Behavior constitutes a violation of rule #57 - Insubordination." ); *Defendants' Exhibit 5 - Disciplinary Report No. MCWC-05-(I)-0152-B --Testimony of Arresting Officer -Elizabeth Allen* (On May 29, 2005, inmate Hundley "was instructed by Steward Allen to stop throwing food and slinging food onto inmates' trays. Inmate Hundley refused to comply with [this] direct order to stop slinging food and slung a spoonful of rice onto the top of the counter. Inmate Hundley's actions are in direct violation of rule #56 - Failure to Obey a Direct Order."); *Defendants' Exhibit 3 - Internal Institutional Incident Report No. MCWC-05-(I)-0152AB* (same as disciplinary reports).

"The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech. *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)].... The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "In prison, of course, first amendment rights are not absolute. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [first amendment] rights. 417 U.S. at 821." *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986). "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.' *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)) (internal quotation marks omitted).... [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and ... disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest." *Hargis v. Foster*, 312 F.3d 404, 409-410 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989). The situation is somewhat complicated when the alleged act of retaliation is issuance of a disciplinary or behavior citation as prisoners often attempt to "inappropriately

insulate themselves from [such] actions by drawing the shield of retaliation around them."
*Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).  Thus, federal courts must "carefully scrutinize retaliation claims" which challenge the issuance of disciplinaries against prison inmates.  *Id.*; *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("[C]ourts must approach prisoner claims of retaliation with skepticism and particular care.  *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983).  This is [necessary because prisoners'] ...  claims of retaliation are ... easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation-- can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act.").

To present a retaliation claim cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action.  *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986); *Farrow*, 320 F.3d at 1248; *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2nd Cir. 2004); *Morales v. Mackalm*, 278 F.3d 126, 131 (2nd Cir. 2002);

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *Woods*, 60 F.3d at 1166 (Proper assertion of a claim for retaliation requires that a prisoner allege that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred.).

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that prison officials retaliated against the inmate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales*, 278 F.3d at 131; *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations."). If an inmate establishes a prima facie case, the burden then shifts to prison officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court

15

that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court by sufficient and admissible evidence that the proffered reason for the adverse decision is a pretext for retaliation. *Id*.

Hundley alleges that defendant Allen retaliated against him for submitting a complaint against Allen with her superiors, thus satisfying his burden of establishing that he had engaged in protected activities. *See Donnellon*, 794 F.2d at 600-601. However, the defendants have demonstrated through affidavits and other relevant admissible evidence that the adverse actions about which Hundley complains resulted from his violations of institutional rules. Hundley offers only his conclusory allegation that the actions of defendant Allen were retaliatory. As this court must "carefully scrutinize retaliation claims" arising from prison disciplinary actions, *Woods*, 60 F.3d at 1166, and access such claims "with skepticism and particular care[,]" *Dawes*, 239 F.3d at 491, it is clear that Hundley's conclusory allegation is insufficient to show that the reasons proffered by the defendants and substantiated by the evidentiary materials are pretextual. Consequently, the defendants are entitled to summary judgment on the retaliation claim as Hundley fails to establish a causal relationship between his protected activity and the adverse actions taken against him. *Farrow*, 320 F.3d at 1249.

**2. <u>Due Process</u>**. On May 29, 2005, Hundley, while serving food to other inmates

at the evening meal, began "throwing food on the ... trays and slinging food. Inmate Hundley then started talking loudly; loud enough where inmates coming through the line were getting loud with him (inmate Hundley), laughing and commenting on what he was saying. Steward Allen then instructed inmate Hundley to stop talking over the food and serve. Inmate Hundley then started telling Steward Allen that she could write him up because it was noting (sic) they could do to him because he was on medication and that he didn't have nothing but an EOS date. Inmate Hundley also told Steward Allen, he would give her something to write him up for and slung a spoon of rice on the top of the counter." *Defendants' Exhibit 3 - Internal Institutional Incident Report No. MCWC-05-(I)-0152AB*. As a result of this incident, defendant Allen charged Hundley with violations of Rule #56 - failure to obey a direct order, and Rule #57 - insubordination. *Defendants' Exhibit 4 - Disciplinary Report No. MCWC-05-(I)-0152-A* (The aforementioned disciplinary charged that "[o]n May 29, 2005 ..., inmate Christopher Hundley ... was instructed to stop talking over the serving line. Inmate Hundley then stated to Steward Allen that she could write him up because he was on medication and that he didn't have nothing but an EOS date. Inmate Hundley further stated he was going to give Steward Allen something to write him up for. Inmate Hundley's behavior constitutes a violation of rule #57 - Insubordination."); *Defendants' Exhibit 5 - Disciplinary Report No. MCWC-05-(I)-0152-B* (This charge stated that "[o]n May 29, 2005 ..., inmate Christopher Hundley ... was instructed to stop throwing

17

food and slinging food onto inmates' trays. Inmate Hundley refused to comply with Steward Allen's order to stop slinging food and slung a spoonful of rice onto the top of the counter. Inmate Hundley's actions are in direct violation of rule #56 - Failure to Obey a Direct Order.").

On June 13, 2005, a correctional officer served Hundley with notices of the charges lodged against him for actions violative of Rule #56 and Rule #57. At this time, Hundley refused to sign for receipt of the disciplinaries but requested the presence of two inmates as witnesses at the disciplinary hearings. The witnesses requested by Hundley refused to appear on the plaintiff's behalf. *Defendants' Exhibit 4 - Disciplinary Report No. MCWC-05-(I)-0152-A* at 2; *Defendants' Exhibit 5 - Disciplinary Report No. MCWC-05-(I)-0152-B* at 2. Upon completion of the noticed disciplinary hearings, the hearing officer adjudged Hundley guilty of the aforementioned offenses. *Defendants' Exhibit 4 - Disciplinary Report No. MCWC-05-(I)-0152-A* at 3 ("On 05/29/05, inmate Christopher Hundley ... was insubordinate towards Steward Allen after he was told to stop talking on the serving line. Inmate Hundley stated to Steward Allen that she could write him up because he was on medication. Inmate Hundley further stated he would give Steward Allen something to write him up for. Inmate Hundley's behavior constitutes a violation of rule #57 - Insubordination."); *Defendants' Exhibit 5 - Disciplinary Report No. MCWC-05-(I)-0152-B* at 3. ("On 05/29/05, Steward Allen instructed inmate Hundley to stop throwing and

slinging food onto inmates' trays.  Inmate Hundley refused to do so, therefore inmate Hundley is in direct violation of rule #56 - Failure to Obey a Direct Order.").  The hearing officer based his findings of fact on the sworn testimony of the arresting officer.  The sanctions imposed upon Hundley for these disciplinary infractions included sixty days loss of store, phone and visitation privileges, referral to classification for custody review and referral to the job board for assessment of assigned duties.  *Defendants' Exhibit 4 - Disciplinary Report No. MCWC-05-(I)-0152-A* at 3; *Defendants' Exhibit 5 - Disciplinary Report No. MCWC-05-(I)-0152-B* at 3.  The action of the warden included approval of these disciplinaries but also specified that no reclassification occur.  *Id*.

Hundley complains that the disciplinaries are frivolous.  The court construes this assertion as one challenging the due process afforded Hundley during the disciplinaries with respect to the sufficiency of the evidence presented against him.  Under the circumstances of this case, Hundley's due process challenge entitles him to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.  "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63

L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution). Moreover, an inmate in the

Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level, the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). Thus, the deprivations imposed upon Hundley based on the challenged disciplinaries did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300. This court must therefore determine whether the actions about which Hundley complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court noted,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular

regulations.

    "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

    After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that the temporary loss of privileges and mere referral for review of a job assignment "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id.* at 485. In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, the plaintiff's theory of liability under the law as established in *Sandin* is without merit, and, therefore, summary judgment is due to be granted in favor of the defendants on the due process claims.

Moreover, assuming *arguenda* that the sanctions imposed upon Hundley warranted

the protections of due process, Hundley remains entitled to no relief.  In *Wolff*, the United States Supreme Court determined that in the context of a prison disciplinary proceeding the Due Process Clause requires three procedural protections which include (1) advance, written notice of the charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence, and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.  Furthermore, at a prison disciplinary hearing, the requirements of due process are satisfied if "some evidence" supports the decision of the disciplinary hearing officer.  *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773 (1985).  The law is well settled that it is not the function of this court to assume the task of retrying prison disciplinary disputes and no *de novo* review of a hearing officer's factual findings is required when the decision is supported by some evidence.  *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir.), *cert. denied*, 455 U.S. 992, 102 S.Ct. 1619 (1982).

A thorough review of the disciplinary reports demonstrates that the disciplinary proceedings on the insubordination and failure to obey a direct order charges comported with all of the requirements of *Wolff*.  Correctional officials furnished Hundley with advance, written notice of the charges against him, allowed him the opportunity to call witnesses and present documentary evidence in his own behalf, and provided written statements by the fact finder of the evidence relied on and the reasons for the disciplinary

actions.   Additionally, ample evidence supported the decisions of the hearing officer.
Nothing more is required by the Constitution.  It is therefore clear that Hundley received
all the process to which he was due in the disciplinary proceedings.

 **3.  Fabricated Disciplinaries**.  Hundley asserts the disciplinaries lodged against
him are the result of frivolous, malicious and false accusations made by defendant Allen.
The defendants, however, maintain that the disciplinaries occurred due to Hundley's
violations of institutional rules governing inmate behavior.  Thus, the defendants do not
admit that the information contained in the disciplinary reports is either frivolous,
malicious or false.  While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991) establishes
a constitutional claim for the knowing use of false information by prison officials, the
instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d
940 (11th Cir.), *cert. denied*, 459 U.S. 1043, 103 S.Ct. 462 (1982).  In *Slocum*, the Court
held that prisoners do not state a due process claim by merely asserting that erroneous
information may exist in their prison files.  Moreover, "prisoners cannot make a conclusory
allegation regarding the use of [false] information as the basis of a due process claim."
*Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001).  Hundley simply asserts that defendant
Allen based the disciplinary actions on frivolous accusations.  This allegation does not state
a viable claim for relief and the defendants are therefore entitled to summary judgment on
the false disciplinary claims.

24

### E.  Job Discrimination

Hundley makes the conclusory assertion that "Sgt. Howard ... subject[ed] Plaintiff ... to job discrimination."  *Plaintiff's Amended Complaint - Court Doc. No. 15* at 5. Hundley, however, presents no facts in support of this allegation.  Additionally, the evidentiary materials submitted by the defendants refute Hundley's allegation and demonstrate that any adverse action taken against the plaintiff with respect to his job assignment resulted solely because of plaintiff's failure to obey the rules and regulations governing inmate behavior.  Upon review of the record, the court concludes that this claim entitles Hundley to no relief.

In order to set forth a claim cognizable under the Equal Protection Clause, "a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race.  *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986) (per curiam)."  *Jones v. Ray*, 279 F.3d 944, 946-947 (11th Cir. 2001).  Moreover, to establish an equal protection violation, a plaintiff must demonstrate the existence of intentional or purposeful discrimination.  *Whitus v. Georgia*, 385 U.S. 545, 550 (1967); *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-1114 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988); *Village of Arlington Heights*

*v. Metro. Housing Development Corp.*, 429 U.S. 252, 265-266 (1977). "Mere error or mistake in judgment ... does not violate the equal protection clause. There must be intentional discrimination [by the defendants].... Even arbitrary administration of [prison regulations], without purposeful discrimination, does not violate the equal protection clause." *E & T Realty*, 830 F.2d at 1114 (citations omitted); *McCleskey v. Kemp*, 481 U.S. 279, 292-293 (1987) (simple disparity of treatment between individuals of different races is insufficient to establish discrimination). "The requirement of intentional discrimination prevents plaintiffs from bootstrapping all misapplications of state [rules and regulations] into equal protection claims. 'Probably no law contrived by man for his own governance ever has had or will be enforced uniformly and without exception. But the Constitution does not demand perfection.'" *E & T Realty*, 830 F.2d at 1114 (citations omitted). Consequently,

> [p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights*, 429 U.S. at 265, 97 S.Ct. 555. Indeed, it is well established that proving intent to discriminate is the essential element of an equal protection claim. *See, e.g.,* ; *Hernandez v. New York*, 500 U.S. 352, 359-60, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("A court addressing [an equal protection claim] must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact.... Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" (omission in original) (quoting *Arlington Heights*, 429 U.S. at 264-265, 97 S.Ct. 555)); *Washington v. Davis,* 426 U.S. 229, 240, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Johnson v. Bush,* 405 F.3d 1214, 1218 (11th Cir.2005); *Citizens Concerned About Our Children v. Sch. Bd.,* 193 F.3d 1285, 1294 (11th Cir.1999); *Elston v.*

> *Talladega County Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir.1993); *Mencer v. Hammonds*, 134 F.3d 1066, 1070 (11th Cir.1998); *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995).

*Holton v. City of Thomasville School District*, 425 F.3d 1325, 1348-149 (11th Cir. 2005).

"'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences.... It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). In a case such as this one, where the plaintiff challenges actions of a prison official, exceptionally clear proof of discriminatory intent is required. *See Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Where a plaintiff presents no evidence of purposeful discrimination, the law requires entry of summary judgment in favor of the defendant. *McCleskey*, 481 U.S. at 292; *E & T Realty*, 830 F.2d at 1115.

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Hundley bears the burden of producing sufficient evidence that the defendants' actions resulted from intentional discrimination. *Arlington Heights*, 429 U.S. at 265; *Wallis v. J. R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994). Purposeful discrimination can be shown either by direct evidence, i.e., admissions of the defendant, or indirectly by way of circumstantial evidence. *Arlington Heights*, 429 U.S. at 265-266.

A plaintiff, however, cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. at 252. Instead, the law is clear that a plaintiff must present significant probative evidence to preclude summary judgment in favor of the defendant. *Id*. at 249.

Hundley sets forth no facts to support his specious allegation of an equal protection violation; rather, he simply makes the conclusory assertion that the defendants discriminated against him. Hundley therefore utterly and completely fails to meet his burden as he offers no evidence identifying any other similarly situated inmate who received more favorable treatment from the defendants. *Brunskill v. Boyd*, 141 Fed.Appx. 771, 776 (11th Cir. 2005) (district court did not err in granting summary judgment on equal protection claim as inmate "offered no evidence that other similarly situated prisoners were treated more favorably."). Additionally, Hundley proffers no evidence that any discriminatory purpose constituted a motivating factor in the actions of the defendants related to his job assignment. Furthermore, it is clear from the undisputed evidentiary materials that the actions of the defendants with respect to Hundley's job assignment occurred because Hundley acted in violation of applicable prison rules. In light of the foregoing, summary judgment is due to be granted in favor of the defendants on the equal protection claim.

### F.  Censored Mail

Hundley makes the conclusory allegation that correctional officials at the Montgomery Community Work Center censored his personal and legal mail.  He presents no evidence to support this claim.  The plaintiff's speculative and conclusory allegation does not provide sufficient evidence to oppose the defendants' motion for summary judgment with respect to this claim.  *Harris v. Ostrout*, 65 F.3d at 916; *Fullman v. Graddick*, 739 F.2d at556-557.

To the extent Hundley's assertion may be construed as a claim that correctional officials denied him access to the court, he is entitled to no relief on this claim.  The law is well settled that inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance created in *Bounds*.  Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show  actual injury" arising from the alleged inadequacies in the law library or legal assistance program. *Lewis*, 518 U.S. at 349. In identifying the specific right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right of ***access to the courts***.... [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means

29

for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"  *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further determined *Bounds* did not require "that the State ... enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court.... To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires."  *Id*. at 354 (emphasis in original).

The Court similarly rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing.  *Id*. at 349.  Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims.  518 U.S. at 356.  "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.  When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury.  *Lewis*, 518 U.S. at 356.  Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his]

30

convictions or conditions of confinement.... [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356-357. "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id*. at 356. A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363.

Hundley presents only specious allegations of a constitutional violation and fails to identify any action which actually hindered his efforts to pursue claims before this or any other court. Hundley has utterly and completely failed to come forward with evidence that the defendants deprived him of the ***capability*** to pursue claims; rather, throughout the proceedings in this case, Hundley demonstrated that he is proficient and prolific at presenting and arguing claims to the court of his choice. Nothing before the court indicates that actions of the defendants in any way improperly impeded or adversely affected the

31

plaintiff's efforts to pursue nonfrivolous legal claims, and, therefore, Hundley fails to establish the requisite injury. *Lewis*, 518 U.S. at 356. Summary judgment is therefore due to be granted in favor of the defendants. *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be granted.

2. Judgment be entered in favor of the defendants.

3. The costs of this proceeding be taxed against the plaintiff.

4. This case be dismissed with prejudice.

It is further

ORDERED that  on or before March 4, 2008 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from

attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 20th day of February, 2008.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE